**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| POWER BUYING DEALERS USA, INC., a Delaware corporation, CR@ZY US, LLC, a North Carolina limited liability company, and POWER ENERGY CORPORATION, a Delaware Corporation, | Case No. 1:21-cv-3154 |
| Plaintiffs, | Judge Sharon J. Coleman |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| JUUL LABS, INC., a Delaware corporation, and HS WHOLESALE, LIMITED, an Illinois corporation, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JUUL LABS INC.'S AND HS WHOLESALE, LIMITED'S MOTION TO DISMISS ALL CLAIMS OF PLAINTIFFS CR@ZY US, LLC AND POWER ENERGY CORPORATION**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

    I.    Legal Standard ................................................................................................................. 2

    II.    Cr@zy Us and Power Energy Do Not Allege Facts Sufficient to State a Plausible Robinson-Patman Claim. ....................................................................... 3

    III.    The Non-Purchaser Plaintiffs Lack Standing to Pursue Robinson-Patman Claims Based on JLI's Sales of JUUL Products to PBD and to HSW. .................. 5

        A.    Factors for Standing. ................................................................................. 6

        B.    As a Commissioned Sales Entity, Cr@zy Us Lacks Standing. ................. 7

        C.    Power Energy Sold "Merchandise Packages" With Ethanol Rather Than Purchasing and Re-selling JUUL Products. ....................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Associated Gen. Contractors of Calif. v. Calif. State Council of Carpenters*,
    459 U.S. 519 (1983) ................................................................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................3

*Bissessur v. Indiana Univ. Bd. of Trustees*,
    581 F.3d 599 (7th Cir. 2009) .............................................................................................2

*Bodie-Rickett & Assoc. v. Mars, Inc.*,
    957 F.2d 287 (6th Cir. 1992) .............................................................................................6

*Feeney v. Chamberlain Mfg. Corp.*,
    831 F.2d 93 (5th Cir. 1987) ...............................................................................................8

*FTC v. Morton Salt Co.*,
    334 U.S. 37 (1948) .............................................................................................................7

*Haff v. Jewelmont Corp.*,
    594 F. Supp. 1468 (C.D. Cal. 1984) ............................................................................8, 11

*McCullough v. Zimmer, Inc.*,
    No. 08cv1123, 2009 U.S. Dist. LEXIS 21815 (E.D. Pa. Mar. 18, 2009), *aff'd*, 382 F. App'x
    225 (3d Cir. 2010) ..............................................................................................................7

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
    317 F.3d 703 (7th Cir. 2003) .............................................................................................5

*Sanner v. Bd. of Trade*,
    62 F.3d 918 (7th Cir. 1995) ...............................................................................................6

*Thulin v. Shopko Stores Operating Co., LLC*,
    771 F.3d 994 (7th Cir. 2014) .............................................................................................2

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006) ..............................................................................................3, 4, 7, 10

**Statutes**

Clayton Act, 15 U.S.C. § 15 .......................................................................................................5

Robinson-Patman Act, 15 U.S.C. § 13 et seq. ..................................................................... *passim*

**Other Authorities**

Antitrust Law Developments (Eighth), ABA Section of Antitrust Law (2017) ............................. 6

**Rules**

Fed. R. Civ. P 12(b)(6) ......................................................................................................... 1, 2

Defendants Juul Labs, Inc. ("JLI") and HS Wholesale, Limited ("HSW") submit this Memorandum of Law in Support of their Motion to Dismiss All Claims of Plaintiffs Cr@zy Us, LLC ("Cr@zy Us") and Power Energy Corporation ("Power Energy") (collectively, the "Non-Purchaser Plaintiffs"), pursuant to Fed. R. Civ. P 12(b)(6).

## INTRODUCTION

This action is one of two arising from an ongoing business dispute between JLI and Plaintiff Power Buying Dealers USA, Inc. ("PBD"). On March 4, 2019, JLI sued PBD in Illinois state court to recover more than $8 million that PBD owed JLI for JUUL e-cigarette products ordered in 2018 (*See* Circuit Court of the Eighteenth Judicial Circuit of Illinois, Case No. 2019 L 000259). After over two years of litigating that dispute, PBD filed amended counterclaims in the state court action and, in June 2021, filed this action, both of which allege that JLI engaged in discriminatory pricing, returns and promotional programs that purportedly disadvantaged PBD when it competed with HSW in the sale of JUUL products to customers located in northern Illinois. (Complaint, Dkt. #1). Specifically, PBD alleges that JLI violated Sections 2(a), 2(d), and 2(e) of the Robinson-Patman Act (the "Act") and that HSW knowingly induced or received the benefits of the alleged price discrimination in its favor and against the Non-Purchaser Plaintiffs in violation of Section 2(f).

In its First Amended Complaint (Dkt. #52) (the "FAC"), PBD seeks to add Cr@zy Us and Power Energy as plaintiffs with minimal allegations specific to these two new entities, and with no suggestion that either entity ever bought JUUL products from JLI and re-sold those products in competition with HSW. (FAC, ¶¶ 99-102). Instead, Cr@zy Us allegedly served as a commissioned sales agent for PBD to convenience stores interested in purchasing packages of merchandise that included JUUL products. (*Id.* at ¶¶ 2, 99-102) Power Energy, another PBD

contractee, allegedly sold an ethanol blended gasoline ("E85"), not JUUL products, as part of similar merchandise packages. (*Id.* at ¶¶ 3, 99-102).

The FAC fails to state a claim for either of the Non-Purchaser Plaintiffs because their involvement with JUUL products related to sales of merchandise packages (packages combining E85, JUUL products and other merchandise) and because the injuries they allege are too remote and speculative. The FAC also fails to allege that JLI charged Cr@zy Us or Power Energy discriminatory prices on any purchase of its products, and fails to allege that HSW competed against either Non-Purchaser Plaintiff or knowingly received discriminatory prices to do so. The Court should dismiss the Non-Purchaser Plaintiffs' claims against JLI and HSW.

## ARGUMENT

### I. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges whether a plaintiff has pleaded facts sufficient to "state a claim to relief that is plausible on its face" and to "raise a right above the speculative level." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While courts accept properly pleaded allegations as true for the purpose of evaluating a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shopko*, 771 F.3d at 997 (citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555. Cr@zy Us and Power Energy failed to plead facts sufficient to state a claim against JLI or HSW.

## II. Cr@zy Us and Power Energy Do Not Allege Facts Sufficient to State a Plausible Robinson-Patman Claim.

As the Supreme Court explained, the Robinson-Patman Act "centrally addresses price discrimination in cases involving competition between different purchasers for resale of the purchased product." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 169-70 (2006). The Act does not categorically ban all price differences charged to different purchasers of commodities of like grade and quality, but also requires injury to competition – here, competition among JLI's competing customers. *Id.* at 176. In *Volvo*, plaintiff Reeder-Simco alleged that Volvo gave better price concessions to other dealers than were given to Reeder-Simco. As the Supreme Court noted, the fact that "Volvo dealers may bid for sales in the same geographic area does not import that they in fact competed for the same customer-tailored sales." *Id.* at 179. So, too, for Cr@zy Us and Power Energy. The FAC does not allege facts showing how the two Non-Purchaser Plaintiffs competed for the same Juul product sales as HSW or other JLI distributors, and that shortcoming is fatal to their claims.

Viewing PBD's original (and ongoing) allegations highlights the shortcomings of the Non-Purchaser Plaintiffs' allegations. PBD has alleged that it competed with HSW for the resale of JUUL products to convenience stores and other customers in a defined, relevant market of northern Illinois. (FAC, ¶ 96). It also alleged that better rebates, returns and promotions given by JLI to HSW caused PBD to lose customers to HSW for the resale of JUUL products. (*Id.* at ¶¶ 88–89, 92–94). PBD further alleged that the JUUL products PBD bought and re-sold in competition with HSW were of a similar grade and quality as those purchased by HSW. (*Id.* at ¶¶ 84, 105, 116, 141, 151). PBD devoted 88 paragraphs of its original Complaint and of the FAC to describe the alleged

facts underlying PBD's Robinson-Patman claims. (Complaint, Dkt. 1 at ¶¶ 8-95; FAC, ¶¶ 10-97). The FAC adds nothing to these facts specific to the Non-Purchaser Plaintiffs, who simply incorporate those allegations by reference. (FAC, ¶ 98).

Cr@zy Us's and Power Energy's allegations relay a completely different story, with some of the most telling aspects revealed by what neither of them alleges:

- Neither alleges that it purchased and re-sold JUUL products in competition with HSW. Indeed, both are alleged to have contracted with PBD, not JLI. (*Id*. at ¶ 99). Cr@zy Us appears to have acted as a commissioned sales agent paid on an incentive basis. (*Id.*). No facts are alleged as to Power Energy's exact role in the relevant market other than it had some sort of "contract and relationship" with PBD and sold merchandise packages. (*Id*. at ¶¶ 99, 101).
- Neither alleges that it had any connection with any sale of JUUL products, except when those JUUL products were part of a merchandise package. By definition, the packages were not solely JUUL products but instead "included, but were not limited to, JUUL devices, other JUUL products, and E85." (*Id.* at ¶ 99).
- Neither alleges that the merchandise packages they offered were sold in competition with any merchandise packages offered by HSW.
- Neither alleges that HSW ever re-sold JUUL products as part of a merchandise package that included E85 or other non-JUUL products.
- Neither alleges that it was entitled to or should have received rebates or promotional allowances from JLI, or that JLI unlawfully reduced its allocation of JUUL products to them and in favor of HSW.
- Neither alleges that it sought unsuccessfully to return JUUL products but had those returns disallowed.
- Neither alleges that it competes with HSW in the resale of JUUL products.

Having neither purchased JUUL products nor competed in the resale of JUUL products alone (as opposed to part of a "merchandise package" including E85 ethanol-blended gasoline and other products), neither Non-Purchaser Plaintiff alleges facts sufficient to state a plausible claim for injury or damages in the specific market for the sale of merchandise packages that Cr@zy Us and Power Energy purportedly offered. Having not "competed for the same customer-tailored sales" as HSW, the Non-Purchaser Plaintiffs' allegations fail to state a claim under the Robinson-Patman Act. *Volvo*, 546 U.S. at 179. The Court should dismiss all of the Non-Purchaser Plaintiffs' Claims against JLI and HSW.

4

In addition to the foregoing, and specific to HSW, the Non-Purchaser Plaintiffs have not and cannot state a claim against HSW under Section 13(f) of the Robinson-Patman Act. Section 13(f) provides that "[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, **knowingly** to induce or receive a discrimination in price which is prohibited by this section." 15 U.S.C. § 13(f) (emphasis added). Here, even under the most generous of readings, there is no allegation in the FAC that HSW: (a) knew Cr@zy Us and Power Energy Corporation even existed; (b) knew what (if any) JUUL products Cr@zy Us and Power Energy were selling; (c) had any knowledge of Cr@zy Us and Power Energy Corporation's contractual relationships with PBD; or (d) induced or received more favorable prices on JUUL products from JLI. Thus, Cr@zy Us and Power Energy Corporation have not and cannot assert that HSW *knowingly* engaged in any conduct bared by Section 13(f). For this additional reason, the Court should dismiss the Non-Purchaser Plaintiffs' claims in Count V against HSW.

## III. The Non-Purchaser Plaintiffs Lack Standing to Pursue Robinson-Patman Claims Based on JLI's Sales of JUUL Products to PBD and to HSW.

Neither Non-Purchaser Plaintiff satisfies the standing requirements to bring its antitrust claims. As the Supreme Court has noted, an antitrust violation may cause ripples of harm to flow through the economy, but Congress did not intend Section 4 of the Clayton Act to provide a remedy in damages for all injuries that might conceivably track to a violation.[1] *Associated Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 534–35 (1983). A plaintiff lacks standing to bring an antitrust claim for damages when its claims are too remote and more directly injured parties exist and can bring claims. *Id.* at 541–42; *see also Midwest Gas*

---

[1] Antitrust standing is a distinct inquiry from standing as a constitutional doctrine. *Assoc. Gen. Contractors*, 459 U.S. at 535 n.31. While an allegation of harm generally is "sufficient to satisfy the constitutional standing requirement of injury in fact. . . the court must make the further determination the plaintiff is a proper party to bring a private antitrust action." *Id.*

*Servs., Inc. v. Indiana Gas Co.*, 317 F.3d 703, 710–11 (7th Cir. 2003) (dismissing antitrust claim of service entity because that claim was derivative to claim of a different plaintiff that allegedly suffered direct injury).

### A. Factors for Standing.

In *Associated General Contractors*, the Supreme Court outlined several factors that courts apply to determine whether a party has standing to bring an antitrust claim, including analyzing:

> (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff;
> (2) the nature of the injury, including whether the plaintiff is a consumer or competitor in the relevant market;
> (3) the directness or speculative nature of the injury;
> (4) the potential for duplicative recover or complex apportionment of damages among plaintiffs; and
> (5) the existence of more direct victims.

459 U.S. at 537–45; *see also* Antitrust Law Developments (Eighth), ABA Section of Antitrust Law, 743-44 (2017). Courts should balance these factors, and no single factor is conclusive. *See Sanner v. Bd. of Trade*, 62 F.3d 918, 930 (7th Cir. 1995); *Bodie-Rickett & Assoc. v. Mars, Inc.*, 957 F.2d 287, 290 (6th Cir. 1992).

A plaintiff may lack standing even when it alleges a causal connection between the alleged antitrust violation and the alleged harm suffered by the plaintiff. *Associated General Contractors,* 459 U.S. at 537 (finding plaintiff alleged injury caused by antitrust violation but nonetheless lacked standing). Whatever the merits of PBD's Robinson-Patman claims (and JLI and HSW submit the claims are meritless), the existence of another plaintiff "whose self-interest would normally motivate [it] to vindicate the public interest in antitrust enforcement" weighs against "allowing a more remote party" to bring an action based on the same conduct. *Id.* at 540–41. Here, PBD is that direct party, and PBD brought its claims. As detailed below, neither Cr@zy Us nor Power Energy can satisfy the factors needed to grant standing.

6

### B. As a Commissioned Sales Entity, Cr@zy Us Lacks Standing.

Even accepting the allegations that JLI's alleged discriminatory treatment of PBD resulted in some harm to Cr@zy Us, such harm does not create antitrust standing under the *Associated General Contractors* standard. Cr@zy Us is a commissioned sales agent, not an independent purchaser in commerce. It alleges that it had "contracts and relationships" with PBD to "approach convenience stores and other retailers with merchandise packages of a variety of products." (FAC, ¶ 99). From these merchandise packages, Cr@zy Us "received incentive compensation as a percentage of every dollar over PBD USA's expenses." (*Id.*). As a result of JLI's alleged conduct, Cr@zy Us claims it suffered injury by receiving "reduc[ed] incentive compensation." (*Id.* at ¶ 102). Even accepting these allegations as true, they are not sufficient to establish standing.

First, Cr@zy Us did not suffer the type of injury that the Act was designed to address, and is neither a consumer nor a competitor in the relevant market for the resale of JUUL products. In enacting the Robinson-Patman Act as an amendment to the Clayton Act, "Congress was especially concerned with protecting small businesses which were unable to buy in quantities." *FTC v. Morton Salt Co.*, 334 U.S. 37, 49 (1948). Since the Act targets discriminatory behavior, it aims to remedy "injury to the competitor victimized by discrimination." *Id.* at 50; *see also Volvo*, 546 U.S. at 175. Cr@zy US alleges that HSW received preferential pricing and promotional allowances, but does not allege that Cr@zy Us competed with HSW or other JLI distributors for the downstream sales to convenience stores and smoke shops. (*See* FAC, ¶¶ 96).

Cr@zy Us's injury is merely incidental to PBD's injury, and is insufficient to create standing. Cr@zy Us does not allege it ever took title to any JUUL products or made its own sales of JUUL products. Rather, Cr@zy Us claims it received incentive compensation based on <u>PBD's</u> sales. (*Id.* at ¶ 99). The nature of Cr@zy Us's claimed injury is not the type of injury at which the Act was aimed. *McCullough v. Zimmer, Inc.*, No. 08cv1123, 2009 U.S. Dist. LEXIS 21815, *19,

7

*22 (E.D. Pa. Mar. 18, 2009), *aff'd*, 382 F. App'x 225 (3d Cir. 2010) (finding no standing to bring Robinson-Patman Act claim because plaintiffs were "nothing more than distributors, or intermediaries through which larger [suppliers]. . . distributed their products"); *see also Feeney v. Chamberlain Mfg. Corp.*, 831 F.2d 93, 96 (5th Cir. 1987) (Robinson-Patman Act "designed to protect 'purchasers' and 'competitors,'" so commissioned sales employee who "never received title to the goods" did not have standing to pursue Robinson-Patman claim) (citing *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367 (5th Cir. 1985)).

Second, the indirect and speculative nature of the claimed injury further prevents Cr@zy Us from having standing for a Robinson-Patman claim. Cr@zy Us does not allege it bought JUUL products from JLI, and offers only threadbare allegations that it "approach[ed] convenience stores and other retailers" to sell packages of merchandise that included JUUL products, ethanol-blended gasoline and other merchandise. (FAC, ¶ 99). A review of the FAC demonstrates that the added allegations comprise approximately five paragraphs of substance. (*See Id.* at ¶¶ 98–102). These paragraphs add nothing to JLI's and HSW's alleged conduct as described in the original Complaint, and change nothing relating to the alleged violations of the Act. (Complaint, Dkt. #1 at ¶¶ 8-95 ; FAC, ¶¶ 10-97).

Rather, all of the allegations added in relation to the Non-Purchaser Plaintiffs claim an indirect injury that purportedly resulted from their contractual arrangements with PBD. (FAC, ¶¶ 98–102). None of the added paragraphs allege any Robinson-Patman violation separate from the ones claimed by PBD. (*Id.*). Thus, any losses that Cr@zy Us incurred as a result of price or promotion differentials between what JLI charged PBD and what JLI charged HSW were indirect and remote. *See Haff v. Jewelmont Corp.*, 594 F. Supp. 1468, 1478 (C.D. Cal. 1984) ("[p]ersons whose only loss is from the interruption or diminution of a profitable relationship with a party

8

directly affected by the violation have been held to have been injured only remotely and indirectly") (quoting *Robinson v. Stanley Home Prods., Inc.*, 178 F. Supp. 230, 232 (D. Mass. 1959), *aff'd* 272 F.2d 601 (1st Cir. 1959)).

Both the speculative nature of the injury and the need for a complex apportionment of damages are illustrated by the disconnect between the products purportedly of like grade and quality for the Robinson-Patman claim (JUUL products), and the products for which Cr@zy Us served as a sales agent (the package of JUUL products, ethanol blended gasoline, and other merchandise). The FAC also alleges that the non-JUUL products yielded a "large margin." (FAC, ¶ 101). Allowing Cr@zy Us's claims to proceed would require guessing both: 1) how many more merchandise packages Cr@zy Us might have convinced customers to purchase if PBD had received better terms on the JUUL product portion of those merchandise packages, and; 2) what differences in commissions would have resulted. That inquiry piles speculation onto indirectness.

Finally, a more direct plaintiff exists and filed this action: PBD. The FAC alleges that PBD—not the Non-Purchaser Plaintiffs—purchased products from JLI in sales contemporaneous to those JLI made to HSW. (FAC, ¶¶ 106, 117). Any injury to Cr@zy Us is merely a result of its "contracts" and "relationship" with PBD, not a direct result of any of JLI's alleged conduct. (*Id.* at ¶ 99). Given the existence of that more direct plaintiff and the remoteness of Cr@zy Us's indirect, derivative claims, Cr@zy Us lacks standing and the Court should dismiss its claims. *Assoc. Gen. Contractors*, 459 U.S. at 542.

### C.     Power Energy Sold "Merchandise Packages" With Ethanol Rather Than Purchasing and Re-selling JUUL Products.

Power Energy's claims also fail based on the Associated *General Contractors* factors. First, the nature of Power Energy's injury weighs against antitrust standing, as it likewise alleges no injury as a competitor to and in the same relevant market as HSW (*i.e.*, resale of JUUL

9

products). (*See* FAC, ¶¶ 99–102). Power Energy also does not allege it ever took title to, possession of, or control over any JUUL products. Instead, similarly to Cr@zy Us, it merely alleges that it sold "merchandise packages" pursuant to "contracts and relationships" with PBD, (*Id.* at ¶ 99), sales of which "greatly declined" as a result of JLI's conduct. (*Id.* at ¶ 102).

To the extent that Power Energy did sell (rather than market or broker) merchandise packages that included some JUUL products, it did not participate the relevant market for the purpose of having standing to bring antitrust claims against JLI. See *Volvo*, 546 U.S. at 179 (requiring that Robinson-Patman plaintiff had competed for the same customer-tailored sales). Here, the FAC claims that "**PBD USA and HS Wholesale** compete for **sales [of] JUUL devices** to customers in northern Illinois." (FAC, ¶ 96) (emphasis added); *see also Id.* at ¶ 83 ("PBD USA and HS Wholesale are in direct competition for various customers for the distribution and sale of JUUL devices and other JUUL products in northern Illinois."). Thus, PBD's alleged market contemplates only the sale of *JUUL devices specifically*. It does not contemplate any of the other products in the merchandise packages. Yet Power Energy impermissibly attempts to link its injury—a decline in sales of merchandise packages—to the specific market for JUUL products.

The FAC has few details on the contents of these merchandise packages. It mainly notes that they featured E85, an ethanol fuel blend for vehicles. (*Id.* at ¶ 99). This E85 fuel blend product "returned a large margin for PBD USA and Power Energy." (*Id.* at ¶ 101). The FAC does not allege that revenues for JUUL products represented a significant portion of the proceeds Power Energy received from merchandise packages, let alone that JUUL products were anywhere near as important to marketing and selling the packages as the E85 fuel blend. At best, Power Energy has alleged that it participated in the market for these unique merchandise packages, not the downstream market for JUUL products.

10

Second, Power Energy's alleged injury is wholly indirect and speculative. The FAC never alleges that Power Energy took title to and re-sold any products at issue, and contains language that belies any argument that Power Energy ever did so. For example, the FAC alleges that prices paid by competing distributors like HSW were not functionally available to "plaintiff" and "PBD USA"—not that those prices were not available to the Non-Purchaser Plaintiffs. (*Id.* at ¶¶ 109, 120, 154). It further alleges that the relevant goods "were sold to PBD USA and HSW in contemporaneous sales." (*Id.* at ¶¶ 106, 117). It never mentions any prices that Power Energy paid. This makes sense because, as evidenced by the FAC's allegations, only PBD ever actually purchased any JUUL products. Thus, Power Energy's alleged injury is entirely derivative of PBD's alleged injury. *See Haff*, 594 F. Supp. at 1478.

Power Energy's claims share the same speculative nature and problems of complex damages apportionment as Cr@zy Us's claims, requiring guesswork on how many merchandise packages Power Energy would have sold absent alleged conduct that relates *only* to JUUL products. The FAC contains only the conclusory allegation that "[w]ithout the JUUL products and devices, the packages were no longer appealing to customers." (FAC, ¶ 102). However, it does not provide any other facts explaining such a conclusory allegation. Indeed, given the ambiguous allegations regarding Power Energy's role, allowing it to pursue its claims could potentially subject JLI and HSW to duplicative damage claims in the unlikely event that plaintiffs could actually prove their Robinson-Patman claims.

Finally, as with Cr@zy Us, PBD is a "more direct victim" of the alleged antitrust violation than Power Energy, and the appropriate plaintiff in this action. *Associated Gen. Contractors*, 459 U.S. at 545. The FAC alleges that Power Energy was "damaged by the illegal conduct by defendants outlined in Paragraphs 10 through 97 above." (FAC, ¶ 98). All the allegations in those

11

Paragraphs relate entirely to JLI's sales to PBD, JLI's sales to HSW, and the resulting harm that PBD allegedly suffered. This "incorporated by reference" allegation further demonstrates that Power Energy's alleged Robinson-Patman claim is entirely derivative of PBD's alleged claim, so dismissing Power Energy from this case would pose no risk of leaving "an antitrust violation undetected or unregulated." 459 U.S. at 542. Thus, PBD is the appropriate antitrust plaintiff, not Power Energy.

\*     \*     \*

For the foregoing reasons, JLI and HSW respectfully request that the Court dismiss all of Cr@zy Us's and Power Energy's claims in the First Amended Complaint.

Dated: January 18, 2022

| Juul Labs, Inc. | HS Wholesale, Limited |
|---|---|
| By: */s/ Lauren M. Loew* | By: */s/ Michael A. Jacobson* |
| Lauren Michelle Loew | James A. Morsch |
| Elizabeth Price Mazzocco | Michael A. Jacobson |
| Foley & Lardner LLP | Saul Ewing Arnstein & Lehr LLP |
| 321 N. Clark St., Suite 3000 | 161 N. Clark St., Suite 4200 |
| Chicago, IL 60654 | Chicago, IL 60601 |
| emazzocco@foley.com | michael.jacobson@saul.com |
| lloew@foley.com | |
| | |
| James T. McKeown | |
| Foley & Lardner LLP | |
| 777 East Wisconsin Avenue | |
| Milwaukee, WI 53202 | |
| jmckeown@foley.com | |

## CERTIFICATE OF SERVICE

I, Lauren M. Loew, an attorney, certify that on January 18, 2022 I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JUUL LABS INC.'S AND HS WHOLESALE, LIMITED'S MOTION TO DISMISS ALL CLAIMS OF PLAINTIFFS CR@ZY US, LLC AND POWER ENERGY CORPORATION** to be filed with the Clerk of the Court using the CM/ECF system for the District Court of the Northern District of Illinois, which will send an electronic copy of the foregoing to counsel of record and constitutes service pursuant to Local Rule 5.9 of the Northern District of Illinois.

*/s/ Lauren M. Loew*
Lauren M. Loew