IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| POWER BUYING DEALERS USA, INC., a Delaware corporation, CR@ZY US, LLC, a North Carolina limited liability company, and POWER ENERGY CORPORATION, a Delaware corporation, | ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 21 C 3154 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| JUUL LABS, INC., a Delaware corporation, and HS WHOLESALE LIMITED, an Illinois corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

The Joint Motion to Resolve Discovery Dispute Regarding the Scope of Power

Buying Dealers USA, Inc.'s Discovery Requests [ECF No. 70] is granted. For the

reasons discussed below, the Court agrees with Defendant HS Wholesale Limited

("HSW") that Plaintiff must plead and prove it suffered competitive injury in a

relevant geographic market in this secondary-line discrimination case under Section

2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). PBD alleges in its First Amended

Complaint [ECF No. 52] that it competes with HSW predominantly in northern

Illinois. Therefore, the discovery requests served by Plaintiff Power Buying Dealers

USA, Inc. ("PBD") that seek information about HSW's sales to *all* its customers

regardless of where those customers are located are overly broad, unduly

burdensome, and not proportional to the needs of this case within the meaning of Federal Rule of Civil Procedure 26(b)(1).

Judge Kendall laid out the elements of a secondary-line claim for violation of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), in *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, 214 F. Supp. 3d 675, 686–87 (N.D. Ill. 2016):

> "Section 13(a) of the RPA [Robinson-Patman Act] prohibits sellers from discriminating in price between different purchasers in interstate commerce of products of like grade and quality to the injury or destruction of competition. 15 U.S.C. § 13(a). Price discrimination may fall within one of three categories: primary, secondary, or tertiary. *Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*, 546 U.S. 164, 176, 126 S.Ct. 860, 163 L.Ed.2d 663 (2006); *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 513, 521–22 & n.2 (7th Cir. 2011). To establish a secondary-line violation, applicable here, four requirements must be met: (1) relevant sales made in interstate commerce; (2) sales were of products of 'like grade and quality'; (3) seller discriminated in price between plaintiff and another purchaser; and (4) discrimination may have injured or prevented competition to the favored purchaser's advantage. *See Volvo Trucks*, 546 U.S. at 176–77, 126 S.Ct. 860; *see also Dynegy*, 648 F.3d at 522 (citing ABA Section of Antitrust Law, 1 *Antitrust Law Developments* 490 (6th ed. 2007)). The 'competitive injury prong of this showing may be inferred from evidence that a favored competitor received significantly better prices over an extended period of time; the hallmark of such injury is the diversion of sales or profits from a disfavored purchaser to a favored purchaser.' *Dynegy,* 648 F.3d at 522 (citing *Volvo Trucks*, 546 U.S. at 177, 126 S.Ct. 860)."

*See also Hygrade Milk & Cream Co. v. Tropicana Prod., Inc.*, 1996 WL 257581, at *10 (S.D.N.Y. May 16, 1996); *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584–85 (2d Cir. 1987).

PBD cites *Napleton* in support of its position that "the Robinson-Patman Act does not require a plaintiff making a secondary-line claim to plead and prove a geographic market as part of a relevant market analysis." Joint Motion [ECF No. 70], at 5. Judge Kendall in *Napleton*, however, acknowledged in that case that the

2

plaintiffs' allegation of specific relevant geographic markets within which the named plaintiffs' competitors allegedly conspired with the defendants to cause competitive injury to those plaintiffs was important to her analysis of the motion to dismiss before her in that case. *Napleton*, 214 F. Supp. 3d at 688 ("In addition, Plaintiffs have identified, to the best of their ability given that discovery has yet to occur, the relevant markets in which the Conspiring Dealers operate.").[1] Further, the Second Circuit in *Best Brands*, a case cited with approval in *Napleton*, explained that to satisfy the competitive nexus element of a secondary-line claim under the Robinson-Patman Act, a plaintiff must show that "as of the time the price differential was imposed, the favored and disfavored purchasers competed at the same functional level, i.e., all wholesalers or all retailers, *and within the same geographic market*." 842 F.2d at 584-85, *citing* F. Rowe, Price Discrimination Under the Robinson–Patman Act 173–180 (1962) (emphasis added).

In addition, the competitive injury a plaintiff suffers must be more than *de minimis* to establish a violation of section 2(a) of the Robinson-Patman Act. *Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1171 (7th Cir. 1978) ("plaintiff has not alleged that its sales lost due to secondary price discrimination were more than 'de minimus,' or that they even potentially existed. Yet this court has required such a showing, for if there exists only 'de minimus' or sporadic competition, it is unlikely that a 'lessening of competition' . . . will occur."). Moreover, in *Lupia* the Seventh Circuit

---

[1] In their amended complaint in *Napleton*, the plaintiffs in that case identified the relevant geographic markets as those cities or metropolitan areas in which a named plaintiff was located. *See* First Amended Complaint [ECF No. 21], at ¶ 20, in Napleton's Arlington Heights Motors, Inc., et al. v. FCA US LLC, et al., Case No. 16-cv-403 (N.D. Ill.).

rejected the plaintiff's argument that all he needed to show was "a general threat to competition in any market" and said, instead, that "a plaintiff who is a customer of the discriminating defendant and not a direct competitor of that defendant (a plaintiff involved in 'secondary line competition') has standing only to raise those sales which are injurious to his competition." 586 F.2d at 1170. This supports the notion that a plaintiff must show it suffered competitive injury in a relevant geographic market to sustain a secondary-line claim under section 2(a) of the Robinson-Patman Act.

PBD specifically alleges in its First Amended Complaint that it competes with HSW in northern Illinois. *See* First Amended Complaint [ECF No. 52], at ¶¶ 73, 83, 87, 95, 96, 97, 104, 105, 107, 108, 1115, 116, 118, 119, 126, 133, 134, 140, 141, 142, 143, 150, 151, 152, 153, 154, and 159. PBD also alleges in paragraph 93 of its First Amended Complaint that a customer it identifies as B&G Wholesale diverted its purchases from PBD to HSW, and PBD says in the Joint Motion that B&G Wholesale is located in Texas. First Amended Complaint [ECF No. 52], at ¶ 93; Joint Motion [ECF No. 70], at 7. In addition, PBD says in the Joint Motion that a customer in Michigan it identifies as Zee Wholesale diverted its purchases from PBD to HSW though PBD does not identify any sales to Zee Wholesale in its First Amended Complaint. Joint Motion [ECF No. 70], at 7. B&G Wholesale and Zee Wholesale are the only PBD customers whose business allegedly was diverted away from PBD outside northern Illinois based on the record before the Court for purposes of the Joint Motion [ECF No. 70].

4

According to PBD, discovery here should not be limited to the diversion of sales within a particular geographic market in which it and HSW compete. Rather, PBD argues that evidence of diversion of sales from PBD to HSW, presumably anywhere in the country, is relevant to PBD's secondary-line discrimination claim in this case. Joint Motion [ECF No. 70] ("For example, suppose an Indiana customer wrote an email to the president of HS Wholesale in which the Indiana customer stated it was switching its purchases of JUUL products from PBD to HS Wholesale, specifically because HS Wholesale had received greater allocations of the number of JUUL products subject to a rebate. That evidence would clearly be probative. . . [of] whether HS Wholesale knowingly received such price discrimination from JUUL and whether those allocations caused customers to divert their purchases from PBD to HS Wholesale.").

The Court disagrees with PBD's concept of the scope of relevant discovery in this case. PBD alleges that it suffered competitive injury, an element of its Robinson-Patman Act claim, primarily if not exclusively in northern Illinois. That is the relevant geographic market for purposes of this case as currently pled. Based on the allegations in PBD's First Amended Complaint, and the legal framework for a secondary-line claim for violation of section 2(a) of the Robinson-Patman Act, the Court agrees with HSW that the proper scope of discovery in this case with respect to sales allegedly diverted from PBD to HSW is limited to the relevant geographic market of northern Illinois. To the extent that PBD can show or allege with specificity that there is more than one relevant geographic market in which PBD and HSW

engage in more than sporadic or *de minimis* competition, then discovery potentially could include HSW's sales to customers in that geographic market during the relevant time as well. Under no circumstances, however, is PBD entitled to discovery concerning HSW's sales to all its customers no matter where those customers are located as this case is currently framed. The Court agrees with HSW that such broad discovery is unduly burdensome and not proportional to the needs of the case at this juncture.

To be clear, the Court's order today limits PBD's written discovery to HSW's sales to customers in northern Illinois which is the relevant market alleged in the First Amended Complaint. HSW says in the Joint Motion, however, that it will "produce responsive information subject to the relevant market of northern Illinois that PBD ha[s] defined, and further to the extent PBD specifically identified any customers who it believed to have 'diverted' their business from PBD to HSW as a result of the Juul product allocations, such as, for example, the customers that PBD specifically identified in its pleadings." Joint Motion [ECF No. 70], at 14 (citing the First Amended Complaint [ECF No. 52], at ¶¶ 93-94). HSW also says in the Joint Motion it "is willing to produce customer information [subject to the confidentiality order entered earlier in this case [ECF No. 41]] for discovery that is within the relevant geographic market of northern Illinois, and to the extent PBD identifies specific customers, by name, who it demonstrates are in the relevant market." Joint Motion [ECF No. 70], at 20. The Court is not quite sure what HSW is suggesting it is prepared to do in these passages from the Joint Motion. The Court, however, has no

issue with HSW producing information about its sales to customers, such as B&G Wholesale identified in the First Amended Complaint or Zee Wholesale identified in the Joint Motion, or others who are not located in the relevant geographic market of northern Illinois, if that would avoid further discovery disputes. But the Court is not ordering HSW to do so now.

Accordingly, the parties' Joint Motion to Resolve Discovery Dispute Regarding the Scope of Power Buying Dealers USA, Inc.'s Discovery Requests [ECF 70] is granted and PBD's written discovery requests to HSW are limited to the extent and for the reasons discussed in this Memorandum Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 18, 2022