### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| POWER BUYING DEALERS USA, INC., CR@ZY US LLC, and POWER ENERGY CORPORATION,<br><br>     Plaintiffs,<br><br>  v.<br><br>JUUL LABS, INC., and HS WHOLESALE, LTD.,<br><br>     Defendants. | Case No. 21-cv-03154<br><br>Judge Sharon Johnson Coleman |

### MEMORANDUM OPINION AND ORDER

Before the Court is defendants Juul Labs, Inc. ("Juul") and HS Wholesale, Ltd.'s ("HS Wholesale") motion to dismiss all claims by plaintiffs Cr@zy US, LLC ("Cr@zy Us") and Power Energy Corporation ("Power Energy"). Defendants claim that Cr@zy US and Power Energy lack standing and have failed to state a claim. Since the Motion was filed, Cr@zy Us filed a notice of voluntary dismissal from the case, and thus is dismissed from the case [147]. The Motion remains pending as to Power Energy. The Court finds that it lacks standing, and thus grants defendants' motion to dismiss [122].[1]

### BACKGROUND

The following facts are taken as true for the purpose of this motion. In 2015, Pax Labs, the former owner of Juul, began working with PBD to market and distribute Juul devices[2] to PBD's network of convenience stores. Throughout 2016 and 2017, PBD developed the marketing and distribution program. In July 2017, Juul became an independent company. PBD continued to develop its plan to distribute Juul products.

---

[1] Defendants filed a motion to dismiss at Docket 117 before the Court set the briefing schedule. The operative motion is at Docket 122. The previously filed motion is stricken [117].

[2] Juul devices are e-cigarette devices.

Plaintiffs claim that beginning in early 2018, Juul started to favor other distributors over PBD—specifically, HS Wholesale. Juul started a promotion program (which occurred in Summer 2018, Fall 2018, and Spring 2019) providing distributors with certain rebates for Juul kits. Plaintiffs contend that HS Wholesale received more of these kits than PBD, thus receiving a lower price for these products. Furthermore, plaintiffs claim that Juul would accept returns from favored distributors, but not from PBD, and would provide credits and incentive payments to favored distributors, alongside support services and facilities like neon signs, but not to PBD (at the very least, not on equal terms). Plaintiffs allege the above conduct resulted in customers being diverted to HS Wholesale from PBD in violation of the Robinson-Patman Act.

Power Energy maintains it was also harmed by the above conduct. PBD had contracts with Power Energy to sell merchandise packages to convenience stores. These merchandise packages included Juul devices, as well as E85 (an ethanol fuel blend) provided by Power Energy. Allegedly, these merchandise packages allowed PBD and Power Energy customers to save money (rather than purchase the merchandise individually). The sales of ethanol also returned a large margin for PBD and Power Energy. Power Energy alleges that the above conduct caused sales of the merchandise packages to decline, reducing profits to Power Energy.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when

2

the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

Defendants move to dismiss all claims brought Power Energy for violations of the Robinson Patman Act, 15 U.S.C. § 13. They contend that that it fails to state a claim and lacks standing under the Act. Finding standing to be the threshold question, the Court addresses this argument first.

Antitrust standing is distinct from traditional Article III standing, as it asks "whether the plaintiff is a proper party to bring a private antitrust action." *Assoc. Gen. Contractors of Calif. Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 535 n.31, 103 S. Ct. 897, 74 L. Ed. 2d. 723 (1983). Courts consider whether the injury is an antitrust injury that flows from an antitrust violation, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977), as well as "the nature of the [] injury, the tenuous and speculative character of the relationship between the alleged antitrust violation and the [plaintiff's] alleged injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims." *Assoc. Gen. Contractors*, 459 U.S. at 545.[3] Defendants primarily argue that Power Energy does not have standing because its injuries are too remote and a more directly injured party—PBD—exists. The Court will consider how each of the above factors applies to Power Energy only.

The Court first finds that this injury flows from the alleged antitrust violation. Although its specific role is unclear to the Court, it appears Power Energy provides ethanol blends to sell in the merchandise packages that include Juul products. If the competition for Juul products is stifled, it

---

[3] The Court notes that cases in the Seventh Circuit have considered other factors, such as improper motive. *See McGarry & McGarry, LLC v. Bankruptcy Management Solutions, Inc.*, 937 F.3d 1056, 1065 (7th Cir. 2019). Because both parties consider the above factors instead, the Court focuses upon them.

3

hurts sales of these packages, which thus injures Power Energy. This logic is plausible to the Court, and thus the Court finds a causal connection between the injury and the alleged antitrust violation.

Nonetheless, the nature of the injury and relationship between the injury and the antitrust violation cuts against standing. Power Energy is not alleged to have purchased Juul products nor sell Juul products alone; its involvement extends to sales of the merchandise packages. "The Act centrally addresses price discrimination in cases involving competition between different *purchasers* for resale of the purchased product." *Volvo Trucks N. America, Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 169–70, 126 S. Ct. 860, 163 L. Ed. 2d 663 (2006) (emphasis added). Power Energy here may have competed for sales of the merchandise packages, but, as the Court understands it, PBD is the purchaser of the Juul products, not Power Energy.

Power Energy compares itself to the employee in *Blue Shield of Va. v. McCready*, 457 U.S 465, 102 S. Ct. 2540, 73 L. Ed. 2d 149 (1982), where the employee-plaintiff sued a health care insurance provider whose services were directly purchased by plaintiff's employer. The Court found that plaintiff had standing because her injury was a *necessary* step of the illegal conspiracy and the injury "was inextricably intertwined" with the harm inflicted on the market. *Id.* at 479, 484. Indeed, Power Energy may have been injured due to defendants' alleged actions. But its harm is *incidental*; impact on their contract with PBD and ethanol sales was not a *necessary* step to commit the alleged antitrust violation. In addition, the injury to Power Energy does not stem from any direct relationship with defendants; instead, it is through *PBD's* relationship with defendants. *See Midwest Gas Servs. Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 711 (7th Cir. 2003) (dismissing a claim when plaintiff's injury was derivative of another plaintiff's injury). This remoteness thus weighs against standing.

Next, the Court agrees with defendants that it would be difficult to calculate damages given the Juul products were part of a merchandise package. There is a confounding factor (the sale of ethanol) that makes damages calculations more complex; indeed, the non-Juul products allegedly

constituted a large margin of the profits. The Court would have to consider the impact on the *merchandise* package market to calculate damages, beyond the sale of Juul products specifically. It may not be impossible to calculate damages—Power Energy stresses it could hire experts—but this complexity hurts Power Energy's argument that it has standing.

Lastly, the Court considers who is the direct victim in this case. PBD is best situated to remedy the alleged violations as the direct competitor with HS Wholesale and purchaser of the Juul Products. Power Energy, who contracts with PBD, is not. *See Kochert v. Greater Lafayette Health Servs. Inc.,* 463 F.3d 710, 719 (7th Cir. 2006) (finding plaintiff failed to show standing "because she is not the party who can most effectively vindicate the purposes of the antitrust laws" (internal citation omitted)); *Assoc. Gen. Contractors*, 459 U.S. at 542 ("The existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of the private attorney general."). Thus, weighing all the factors, the Court finds that Power Energy lacks standing. It may have been injured, but Antitrust law requires more. As a result, the Court does not consider whether it stated a claim for relief.

**Conclusion**

The Court finds that Power Energy lacks standing. Thus, the Court grants defendants' motion to dismiss and dismisses both Cr@zy Us and Power Energy from the case.

IT IS SO ORDERED.

Date: 9/15/2023

Entered:_____
SHARON JOHNSON COLEMAN
United States District Judge